IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CLEVELAND WHITMORE AND LOUISE K. WHITMORE, | : : | CIVIL ACTION |
| Plaintiffs | : : | |
| vs. | : : | |
| LIBERTY MUTUAL FIRE INSURANCE COMPANY, | : : | NO. 07-5162 |
| Defendant | : | |

**MEMORANDUM AND ORDER**

Gene E. K. Pratter, J.                                                                                    September 30, 2008

      Heating oil spilled into Cleveland and Louise Whitmore's basement in December 2006, and they made a claim for coverage of the damages under their Liberty Mutual Fire Insurance Company ("Liberty Mutual") homeowners insurance policy. Liberty Mutual denied the claim, asserting that the pollution exclusion in the policy justified the insurer's escape from covering the claim. The Whitmores sued the insurer, asserting claims for breach of contract and bad faith.

      Liberty Mutual has filed a Motion for Summary Judgment, and the Whitmores responded with a Cross-Motion for Partial Summary Judgment. The parties have filed numerous responses and replies. For the reasons explained below, both motions are granted in part and denied in part. Specifically, the Court concludes that the pollution exclusion is inapplicable here, leaving the ultimate question of coverage for the parties' further consideration through discovery and trial

preparation, if necessary.[1]  The Court also concludes that the Whitmores' bad faith claim cannot proceed.

**I. LEGAL STANDARD**

Upon motion of a party, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  Summary judgment may be granted only if the moving party persuades the district court that "there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party."  Miller v. Ind. Hosp., 843 F.2d 139, 143 (3d Cir. 1988).  An issue is "genuine" if a reasonable fact-finder could possibly hold in the non-movant's favor with regard to that issue.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  A fact is "material" only if it could affect the result of the suit under governing law.  Id.

Evaluating a summary judgment motion, the court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor. Hugh v. Butler County Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005).  If, after making all reasonable inferences in favor of the non-moving party, the court determines that there is no genuine issue of material fact, summary judgment is appropriate.  Celotex Corp. v. Catrett, 477 U.S. 217, 322 (1986); Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 83 (3d Cir. 1987).

The party opposing summary judgment must support each essential element of that

---

[1] In addition to invocation of the pollution exclusion, Liberty Mutual has raised numerous other affirmative defenses to coverage.  See, Answer (Doc. No. 5) at 6-10.

party's opposition with concrete evidence in the record. Celotex, 477 U.S. at 322-23. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted). This requirement upholds the "underlying purpose of summary judgment [which] is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense." Walden v. Saint Gobain Corp., 323 F. Supp. 2d 637, 642 (E.D. Pa. 2004) (citing Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976)). The standards by which a court decides a summary judgment motion do not change when the parties file cross-motions. Southeastern Pa. Transit Auth. v. Pennsylvania Pub. Util. Comm'n, 826 F. Supp. 1506, 1512 (E.D. Pa. 1993).

**II. BACKGROUND**

To describe the background of this case, the Court sets out those facts of record that are undisputed. Moreover, they are construed in the light most favorable to the non-moving partiy. The Court disregards those factual allegations that either party makes without any evidentiary support from the record. See Celotex, 477 U.S.at 322-23; see also Jones v. United Parcel Service, 214 F.3d 402, 407 (3d Cir. 2000) (requiring more than "unsupported allegations" to defeat summary judgment). This factual recitation separately notes those instances where one party disputes factual contentions made by the other party, but provides no evidentiary basis from the record for those disputes, and, in that case, the opposing party's factual contentions are treated as undisputed. See Blaylock v. City of Philadelphia, 504 F.3d 405, 413 (3d Cir. 2007) (citing Anderson) (when the record contradicts a party's description of the facts, it does not create a genuine dispute).

Major Oil delivered home heating oil (fuel oil #2) to the Whitmores' house at 1710 E. Mayland Street, Philadelphia, Pennsylvania, on December 9, 2006. (Def.'s Summ. J. Mot. ¶ 8, Ex. 2.) During the delivery to the Whitmores' aboveground storage tank, approximately 10 to 15 gallons of oil leaked into the Whitmores' basement.[2] (Id. ¶¶ 9, 10.) Major Oil hired React Environmental to clean up the spill. (Id. ¶ 11.) Hillis Adjustment Agency ("Hillis"), the Whitmores' public adjuster, estimated the cost of the damage to the house and personal property was $9,376.09.[3] (Compl., Ex. B.) Hillis notified Liberty Mutual of the oil spill on December 11, 2006, and two days later, Hillis requested that Liberty Mutual provide coverage for damages resulting from the spill. (Def.'s Summ. J. Mot. ¶¶ 12, 13.) Jacques Whitford Company, an environmental engineering and consulting firm hired by Liberty Mutual, investigated the oil spill on December 14, and determined that the oil had leaked from the vent pipe fittings/connection at the storage tank caused by the overfilling of the tank, and that "there was no evidence of soil impact" and no implication of groundwater or surface water impacts from the spill. (Id. ¶¶ 14, 15, Ex. 8.) On December 22, 2006, Liberty Mutual informed Hillis that the Whitmores' claim was denied. (Id. ¶ 17, Ex. 9.) In a January 8, 2007 letter to the Whitmores, Liberty Mutual denied that the oil spill was covered under the Liberty Mutual policy. Among other reasons, Liberty Mutual asserted that the oil spill was excluded under the policy's pollution exclusion. (Id. ¶ 18,

---

[2] Liberty Mutual asserts that Major Oil caused the spill by overfilling the Whitmores' oil tank. (Def.'s Summ. J. Mot. ¶ 9.) The Whitmores counter that "the spill was caused by a cracked oil pipe." (Pls.' Countermot. for Summ. J. ¶ 9.) However, the cause of the spill has no bearing on the Court's determination of whether the pollution exclusion in Liberty Mutual policy excludes coverage for the event at issue. Therefore, the cause of or responsibility for the spill need not be addressed at this juncture.

[3] The total cost reported by Hillis, including the adjuster fees, was $12,685.12. (Compl., Ex. B.)

Ex. 9.)

The Whitmores' homeowners insurance policy from Liberty Mutual (Policy No. H32-281-105050-606) ("Liberty Mutual policy"), effective from July 23, 2006 to July 23, 2007, was in effect at the time of the oil spill. (Def.'s Summ. J. Mot. ¶ 4, Ex. 1.) "COVERAGE A – DWELLING" of the Liberty Mutual policy states that the insurance policy covers "1: The dwelling on the 'residence premises' shown in the Declarations, including structures attached to the dwelling...." (Id. Ex. 1.) The pollution exclusion, within "SECTION I – PERILS INSURED AGAINST, COVERAGE A – DWELLING and COVERAGE B – OTHER STRUCTURES" of the policy states:

> We insure against risk of direct loss to property described in Coverages A and B only if that loss is a physical loss to property.  We do not insure, however, for loss: . . .
> 2. Caused by: . . .
>     e. Any of the following: . . .
>     (5) Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against under Coverage C of this policy.  Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed.; . . .

(Id. ¶ 4, Ex. 1.)

**III. DISCUSSION**

This action is brought in federal court under diversity subject matter jurisdiction.  28 U.S.C. § 1332.  Mr. and Mrs. Whitmore are citizens and residents of Pennsylvania, and Liberty Mutual is an entity organized and existing under the laws of Massachusetts.  Mr. and Mrs. Whitmore claim damages in excess of $75,000.

The parties do not dispute that Pennsylvania law controls the interpretation of the Liberty Mutual policy.  See Erie R.R. v. Tompkins, 304 U.S. 64, 78-80 (1938).  The Court must apply the substantive law as declared by the Pennsylvania Supreme Court, or, if the Pennsylvania Supreme Court has not decided a particular issue, the Court must predict how the Supreme Court would resolve the issue.  Travelers Indem. Co. of Ill. v. DiBartolo, 131 F.3d 343, 348 (3d Cir. 1997).  Lower Pennsylvania court decisions are not binding on the Court, but they do provide persuasive authority.  Coal Heat, Inc. v. United States Fidelity & Guar. Co., No. 99-CV-5647, 2000 U.S. Dist LEXIS 16059, at *11 n.2 (E.D. Pa. Nov. 2, 2000).

**A. Is Heating Oil a Pollutant under the Liberty Mutual Policy Exclusion?**

When an insurer bases its denial of coverage on an affirmative defense, such as a policy exclusion, the insurer bears the burden of proving that affirmative defense.  Madison Constr. Co. v. Harleysville Mut. Ins. Co., 735 A.2d 100, 106 (Pa. 1999) (citing Erie Ins. Exch. v. Transameric Ins. Co., 533 A.2d 1363, 1366 (Pa. 1987)).  The pollution exclusion in the Liberty Mutual policy does not specifically classify heating oil as a pollutant.  Thus, Liberty Mutual has the burden of proving that the pollution exclusion unambiguously applies to the spill of heating oil in the Whitmores' home based on contractual interpretation of the terms in the Liberty Mutual policy.

The Pennsylvania Supreme Court has stated expressly that the goal when interpreting an insurance contract is to "determine the intent of the parties as manifested by the language of the policy" by giving full effect to unambiguous language, but "interpret[ing] in favor of the insured" language that is ambiguous.  Lititz Mut. Ins. Co. v. Steely, 785 A.2d 975, 978  (Pa.

2001) (citing Madison, 735 A.2d at 106). Ambiguity exists if the contract language is "reasonably susceptible of different constructions and capable of being understood in more than one sense." Madison, 735 A.2d at 106 (quoting Hutchison v. Sunbeam Coal Co., 519 A.2d 385, 390 (Pa. 1986)).

Establishing an analytical framework in Madison, and later applying it in Lititz, the Pennsylvania Supreme Court indicated that because "ambiguity (or lack thereof) is to be determined by reference to a particular set of facts," the focus of an inquiry into insurance coverage should be on "the specific product at issue." Madison, 735 A.2d at 106-07. Determining whether contract language is ambiguous requires applying contractual terms to a specific set of facts, without "distort[ing] the meaning of the language or resort[ing] to a strained contrivance to find ambiguity." Id. at 106. Words of "common usage" in the insurance policy should be "construed in their natural, plain, and ordinary sense," using a dictionary to assist in understanding their meaning as may be appropriate and useful. Id. at 108. Considering the significance of Madison, the court in Atlantic Cas. Ins. Co. v. Epstein, 2004 U.S. Dist. LEXIS 19725 (E.D. Pa. Sept. 15, 2004), found that "where a pollution exclusion clause does not specifically and unambiguously classify a substance as a pollutant, the court must perform an extensive analysis to determine if the exclusion clause applies." Id. at *7. Such is the case here.

The Liberty Mutual policy defines "pollutant" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste," and further defines "waste" as "materials to be recycled, reconditioned, or reclaimed." (Def.'s Summ. J. Mot. Ex. 1.) There is no mention of home heating oil or, for that matter, any other petroleum product in the pollution exclusion. (See id.) Unlike the fact patterns and

insurers in Madison and Lititz, Liberty Mutual has not provided any product report, expert opinion, or other source of information to show or even argue that home heating oil is a "pollutant" within the policy's pollution exclusion. Instead, Liberty Mutual relies on distinguishable case law, without addressing the Madison "specific product at issue" analysis. Madison, 735 A.2d at 107.

      Liberty Mutual claims that Pennsylvania courts hold that pollution exclusions identical to the one at issue here unambiguously exclude coverage for losses caused by the release of heating oil. (Def.'s Opp'n to Summ. J. Countermot. At 4-5). On the contrary, the primary Pennsylvania appellate case on which Liberty Mutual relies, Jaskula v. Essex Ins. Co., 900 A.2d 931 (Pa. Super. 2006), does not directly address whether or not heating oil is a contaminant or pollutant. In Jaskula, after an inadvertently cut oil line caused an oil spill, the Department of Environmental Protection "ordered the resulting oil runoff to be remedied." Id. at 932. Because the parties did not contest that the oil to be remediated constituted a "pollutant," the court did not specifically determine that heating oil was a pollutant. See id. at 933-36. Rather, the Jaskula court, without analysis, made reference to "a pollutant, the oil." Id. at 935.[4]

      Liberty Mutual also cites Graham v. Harleysville Ins. Co., 632 A.2d 939 (Pa. Super. 1993). In Graham, oil escaped from a neighbor's tank, invading the neighboring property. The

---

[4] Liberty Mutual's reliance on Coal Heat, Inc. v. United States Fidelity & Guar. Co., No. 99-CV-5647, 2000 U.S. Dist LEXIS 16059 (E.D. Pa. Nov. 2, 2000), is similarly unavailing inasmuch as in that case the court explicitly stated: "There is no dispute raised by either of the parties as to whether the home heating oil released onto the [owners'] property qualifies as a 'pollutant' under the terms of the insurance policy, and we therefore refrain from addressing that question here." Coal Heat, 2000 U.S. Dist LEXIS 16059, at *25 n.9.

court held that the oil constituted a contaminant and was within the pollution exclusion clause.[5]

The Graham court relied solely on the dictionary definition of "contamination" to determine that the escaped oil was a pollutant. The court did not analyze the specific product at issue, namely, the oil, or use the equivalent of the analytical process subsequently required by Madison. See Graham, 632 A.2d at 942; see also Madison, 735 A.2d at 107. Because the cases on which Liberty Mutual relies do not provide the level of analysis required under Madison and Lititz, the Court must undertake the consideration of whether home heating oil constitutes a pollutant under the exclusion at issue. In this regard, Epstein provides a useful example.

Applying the Madison analytical framework, the Epstein court held that heating oil was not a pollutant or contaminant under a pollution exclusion because there was "sufficient ambiguity" for the clause to be construed in favor of the insured.[6] 2004 U.S. Dist. LEXIS 18725, at *15. In Epstein, the insured's oil tank leaked heating oil, which damaged neighboring property. Id. at *1-2. The Epstein court, applying the Madison framework, conducted an extensive analysis of whether home heating oil was a pollutant or contaminant, using dictionary

---

[5]Although Graham does not consider the significance of the fact that the spilled oil invaded neighboring property, Wagner v. Erie Ins. Co., 801 A.2d 1226 (Pa. Super. 2002), demonstrates Pennsylvania appellate jurisprudence holding that heating oil is a pollutant only when the oil has been introduced physically into the environment. In Wagner, the Superior Court held that a pollution exclusion in an insurance policy for a gasoline station unambiguously excluded damage caused by an underground gasoline leak, and rejected the argument that gasoline was not pollutant under the policy. Id. at 1233-34. However, the court also explained that "gasoline 'is not a "pollutant" until introduced into an environment in which it does not belong, i.e., the soil.'" Wagner, 801 A.2d at 1233 (quoting Hocker Oil Co. v. Barker-Phillips-Jackson, Inc., 997 S.W.2d 510, 518 (Mo. Ct. App. 1999)). Wagner was affirmed *per curiam* without an opinion by the Pennsylvania Supreme Court. Wagner v. Erie Ins. Co., 847 A.2d 1274 (Pa. 2004) (per curiam).

[6] The pollution exclusion clause in Epstein is virtually identical to the one in the Liberty Mutual policy at issue here. See Epstein, 2004 U.S. Dist. LEXIS 18725, at *3.

definitions, as well as state and federal regulatory findings and definitions for guidance. Id. Examining the federal and state regulations, the court held that heating oil was only a contaminant or pollutant when associated with ground water or navigable waters. Id. at *10-13. The court found that both the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601 (33), and the Pennsylvania Hazardous Sites Cleanup Act ("PHSCA"), 35 P.S. § 6020.103, "specifically exclude 'petroleum products' from their definitions of the terms 'pollutant' and 'contaminant,'" and that the Clean Water Act, 33 U.S.C. § 1362 (2004), and Oil Pollution Act, 33 U.S.C. § 2701 (2004), "focus solely on the pollution or contamination of water." Id. The Epstein court also observed that the insurer could have listed "petroleum products" in the policy pollution exclusion as a pollutant, irritant, or contaminant in order to alleviate any ambiguity. Id. at *14.[7]

Although the pollution exclusion in the Liberty Mutual policy does not state that a pollutant or contaminant has to be released into the environment in order for events concerning this material to be excluded from coverage, Madison requires an analysis of the specific substance in question, here the spilled heating oil, to determine if it is a pollutant. See Madison, 735 A.2d at 107. As in Epstein, because the record before the Court here does not contain any

---

[7]Another case addressing whether a pollution exclusion clause excluded damage caused by leaking oil, Hartman v. Motorists' Mut. Ins. Co., No. 02-CV-1030, 2006 U.S. Dist. LEXIS 1719 (W.D. Pa. Jan. 19, 2006), held that the pollution exclusion clause was ambiguous because a separate policy provision provided coverage for damage caused by "leaking liquids." Id. at *22. Although the court did not conduct a Madison analysis, the court stated that "[i]n the absence of these additional provisions, the "pollution exclusion" would not be ambiguous." Id. at *22 n.10. There is no "leaking liquids" clause in the Liberty Mutual policy. Here, the Court is not as sanguine as the Hartman court that ambiguity arises only because of a "leaking liquids" provision. Rather, application of the Madison analytical framework to consider the pollution exclusion clause itself leads to the ambiguity determination.

information about the specific product, the Court can look to state and federal governmental statutory definitions to determine whether or not heating oil is a pollutant under the pollution exclusion clause at hand. See Epstein, 2004 U.S. Dist. LEXIS 18725, at *10-11. Under Madison, and as did the court in Epstein, this Court will conduct a similar analysis to determine whether the Liberty Mutual policy excludes coverage for damage resulting from spilled home heating oil.

The dictionary definition of "contaminant" is, not surprisingly, "one that contaminates," and the definition of "contaminate" is "to make impure or unclean by contact or mixture." The American Heritage Dictionary of the English Language (Houghton Mifflin Co. 4th ed. 2004). By this definition, there is little doubt that the heating oil spill "contaminated" the Whitmores' basement. However, Liberty Mutual's own environmental consultant, Jacques Whitford Company, found that there was no soil impact and no indication of groundwater impact. (Def.'s Summ. J. Mot. Ex. 8.) Thus, unlike the cases relied upon by Liberty Mutual, there is no evidence here that the spilled oil "contaminated" the environment in any way because it appears the oil remained contained in the Whitmores' basement. See Jaskula, 900 A.2d at 932; see also Graham, 632 A.2d at 940; Coal Heat, 2000 U.S. Dist LEXIS 16059, at *5-6.

The regulatory definitions for a petroleum product, such as heating oil, also lead to the conclusion that the product must be released into the environment in order for it to be considered a pollutant. Petroleum products are specifically excluded from CERCLA and the PHSCA.[8] See 42 U.S.C. § 9601 (33); 35 P.S. § 6020.103; see also Epstein, 2004 U.S. Dist.

---

[8] Moreover, the Pennsylvania Superior Court, in The Municipality of Mt. Lebanon v. Reliance Ins. Co., 776 A.2d 1228 (Pa. Super. 2001), has applied the Madison analysis to determine that natural gas was not unambiguously a pollutant under the insurance policy's

LEXIS 18725, at *10-11.  Furthermore, the Clean Water Act and Oil Pollution Act both address oil as a pollutant and contaminant solely in relation to water.  See Epstein, 2004 U.S. Dist. LEXIS 18725, at *11-12.  Under the Pennsylvania Storage Tank and Spill Prevention Act, 35 P.S. § 6021.103 (2007), which regulates aboveground and underground oil storage tanks, petroleum products, including heating oil, are defined as a regulated substance "when released into the environment."[9] 35 P.S. § 6021.103.  Heating oil is considered a "hazardous material" and classified as a "flammable liquid" by the U.S. Department of Transportation.  49 C.F.R. § 172.101.  However, as the Reliance court noted, merely because a product is "dangerous," does not mean it is a "pollutant" as a legal or factual matter.  Reliance, 778 A.2d at 1234.[10] Therefore, under state and federal statutes, a key element for determining if heating oil is a pollutant or contaminant is whether or not it has been released into the environment, i.e. into soil or water.  Because the errant heating oil at issue here was not released into the environment,

---

pollution exclusion clause.  Reliance, 778 A.2d at 1233-34.  The Reliance court noted that natural gas was excluded from the definition of pollutant or contaminant in CERCLA and the PHSCA.  Reliance, 778 A.2d at 1234.  Furthermore, in dismissing the insurer's argument that natural gas is pollutant because it is "dangerous" and "its harmful effects are well-known," the Reliance court stated:
> To deem any substance that may have harmful effects under certain circumstances to be unambiguously a "pollutant" *per se* would be to create the "absurd" result that Justice Cappy warned of in his dissent in Madison. . . . We do not believe such a result to have been the intention of our Supreme Court's majority in that case.

Reliance, 778 A.2d at 1234 (citing Madison, 735 A.2d at 110 (Cappy, J., dissenting)).

[9] The Whitmores' storage tank is excluded from this statute because it is "a tank used for storing heating oil for consumptive use on the premises where stored."  35 P.S. § 1021.103.

[10] If "danger" were to become the determining factor, there would be the potentially unworkable invitation to use subjectivity to resolve the question, thus requiring the inevitable issues of "danger" to whom, under what circumstances, and to what degree, among others.

the Court finds no support for an assertion that it constitutes a pollutant under any state or federal regulation.

Because Liberty Mutual relies on inapposite case law, without providing any product information or other evidence that heating oil is a contaminant, Liberty Mutual has failed to meet its burden to show that heating oil is a pollutant excluded from coverage under the policy. As the Epstein court noted, Liberty Mutual could have simply listed "petroleum products" along with "smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste," in the non-exclusive list of what constituted a "contaminant" in order to avoid the ambiguity. See Def.'s  Summ. J. Mot. Ex. 1; see also Epstein, 2004 U.S. Dist. LEXIS 18725, at *14.  Instead, the pollution exclusion clause in the Liberty Mutual policy is "subject to more than one reasonable interpretation" in regard to spilled home heating oil that remains contained within a basement.  See Madison, 735 A.2d at 106.  Therefore, the Liberty Mutual policy must be interpreted in favor of the insured, and the Court finds that the pollution exclusion clause does not preclude coverage of the damage caused by the spilled heating oil in this instance.

**B. Liberty Mutual's Denial of the Whitmores' Claim as Bad Faith**

To recover for their insurer's bad faith denial of coverage, the Whitmores would have to establish that Liberty Mutual "did not have a reasonable basis for denying benefits under the Policy and that [Liberty Mutual] knew of or recklessly disregarded its lack of such a reasonable basis in denying the claim."  Epstein, 2004 U.S. Dist. LEXIS 18725, at *17 (citing Terletsky v. Prudential Property and Casualty Ins. Co., 649 A.2d 680, 688 (Pa. Super. 1994)); see also Kliner v. State Farm Mut. Auto. Ins. Co., 115 F.3d 230, 233 (3d Cir. 1997) (same).  The insured must

make this demonstration by clear and convincing evidence, a very significant burden indeed. Cowden v. Aetna Cas. & Sur. Co., 134 A.2d 223, 229 (Pa. 1957); Terletsky, 649 A.2d at 688. Pennsylvania law does not allow for the finding of bad faith when the insurer's conduct is in accordance with a reasonable, albeit incorrect, interpretation of the insurance policy. Hollingsworth v. State Farm Fire & Cas. Co., 2005 U.S. Dist. LEXIS 3694 (E.D. Pa. March 9, 2005); McCrink v. Peoples Benefit Life Ins. Co. , 2005 U.S. Dist. LEXIS 5072 (E.D. Pa. March 29, 2005).

In denying the Whitemores' claim, Liberty Mutual relied on various Pennsylvania cases that acknowledge heating oil as a pollutant. Although those cases did not follow the analytical framework established in Madison, neither did those cases deny the polluting aspects of heating oil. In fact, one case, Jaskula, acknowledged heating oil as a pollutant as late as 2006. Accordingly, although this Court cannot accept Liberty Mutual's "interpretation given the various factors discussed above, [Liberty Mutual's] is not a wholly unreasonable or reckless interpretation." Epstein, 2004 U.S. Dist. LEXIS 18725, at *18. Because there is insufficient, much less clear and convincing, evidence in the record that Liberty Mutual acted in bad faith in denying the Whitmores' claim, the Court will grant summary judgment for the insurer on the bad faith claim.

**IV. CONCLUSION**

For the reasons set forth above, the Court will grant the Whitmores' Cross-Motion for Partial Summary Judgment as to the inapplicability of the pollution exclusion and deny Liberty

Mutual's Motion on that issue.  The Court grant the insurer's Motion with respect to the bad faith claim.  In all other respects, the case shall proceed.

                                                  BY THE COURT:


                                                  S/Gene E.K. Pratter
                                                  GENE E.K. PRATTER
                                                  UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CLEVELAND WHITMORE AND | : | CIVIL ACTION |
| LOUISE K. WHITMORE, | : | |
| Plaintiffs | : | |
| | : | |
| vs. | : | |
| | : | |
| LIBERTY MUTUAL FIRE INSURANCE | : | NO. 07-5162 |
| COMPANY, | : | |
| Defendant | : | |

## **ORDER**

AND NOW this 30th day of September 2008, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 13), Plaintiffs' Response and Counter Motion for Partial Summary Judgment (Doc. No. 14), Defendant's Opposition to Plaintiffs' Motion for Partial Summary Judgment (Doc. No. 16), Plaintiffs' Reply (Doc. No. 17), and Defendant's Reply (Doc. No. 18), it is HEREBY ORDERED that both Motions are GRANTED IN PART and DENIED IN PART as follows:

1) Defendant's Motion for Summary Judgment (Doc. No. 13) is GRANTED as to the bad faith claim and DENIED in all other respects;

2) Plaintiffs' Motion for Partial Summary Judgment (Doc. No. 14) is GRANTED only so far as finding that the Liberty Mutual policy pollution exclusion does not

preclude coverage of the damage caused by the spilled heating oil in this instance, and DENIED in all other respects.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE